**FIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

JESSE S. GADDIS, individually and on behalf
of all others similarly situated,

                              Plaintiff,

         v.

JUST BRANDS USA, INC., JUST BRANDS
FL, LLC, and SSGI FINANCIAL SERVICES,
INC.,

                              Defendants.

**CIVIL CASE NO. _____**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jesse Gaddis brings this action on behalf of himself and all others similarly

situated against Defendants Just Brands USA, Inc. ("Just Brands USA"), Just Brands FL, LLC

("Just Brands FL") (together, "Just Brands"), and SSGI Financial Services, Inc. ("SSGI")

(collectively, "Defendants"), each of whom collectively do business as "JustCBD."  Plaintiff

makes the following allegations pursuant to the investigation of his counsel and based upon

information and belief, except as to the allegations specifically pertaining to himself, which are

based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of JustCBD-branded

products against Defendants for manufacturing, distributing, and selling underfilled cannabidiol

("CBD") products (collectively, the "CBD Products" or "Products," as enumerated below).

CBD is a highly sought-after dietary supplement that is commonly used to treat anxiety,

insomnia, depression, diabetes, PTSD, and chronic pain.  CBD is sold in a variety of forms,

including compounds, tinctures, and edibles.  CBD can be administered by inhalation of smoke or vapor.  Alternatively, food and beverage items can be infused with CBD as an alternative means of ingesting the substance.

2.      Defendants' labeling and packaging repeatedly overstate the quantity of CBD contained in their Products.  As discussed below, the labeling and packaging of the CBD Products are replete with representations and warranties, namely that the Products purportedly contain specific amounts of CBD (the "CBD Claims").[1]  However, the CBD Products contain only a fraction of the CBD advertised on Defendants' website and on the Products' labeling and packaging.  In fact, some of Defendants' Products contain no CBD whatsoever.  For example, pursuant to independent lab testing commissioned by Plaintiff and performed by Anresco Laboratories ("AL"), the "JustCBD Honey Liquid Tincture," which purports to contain "100mg CBD" in the bottle, actually contains just 48.92mg CBD per bottle.  This represents an <u>underfill of approximately 51%</u>.  As another example, the "JustCBD Apple Rings Gummies," which purportedly contains "250mg CBD," in fact contains a non-detectable quantity of CBD.[2]  This represents an <u>underfill of 100%</u>.  By misrepresenting the true quantity of CBD in their CBD Products, Defendants are able to charge a substantial price premium on account of these fictitious CBD quantity claims.

3.      For all the reasons set forth herein, including but not limited to Defendants' misrepresentations regarding the quantity of CBD in its products, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendants' products, for: (i) breach of express warranty; (ii) breach of the implied warranty of

---

[1] Specifically, the CBD Claims include the following:  "25mg CBD," "50mg CBD," "65mg CBD," "100mg CBD," "200mg CBD," "250mg CBD," "360mg CBD," "500mg CBD," "550mg CBD," "750mg CBD," "1000mg CBD," "1500mg CBD," or "3000mg CBD."

[2] AL screens CBD at a limit of detection of 0.4mg/g.

merchantability; (iii) unjust enrichment; (iv) fraud; (v) violation of New York's General Business Law § 349 ("NYBGL"); (vi) violation of New York's General Business Law § 350 ("NYGBL"); and (vii) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").

## **THE PARTIES**

4.      Plaintiff Jesse Gaddis is a citizen of New York who resides in Woodside, New York.  In November 2018, Plaintiff Gaddis purchased "JustCBD Liquid Honey Tincture" ("Honey Tincture") and "JustCBD Rainbow Ribbons Gummies" ("Rainbow Gummies") from Groupon.com, an online retailer.  Before purchasing his JustCBD-branded products, Plaintiff Gaddis reviewed product information and images, including the CBD Claim, which promised specific quantities of CBD.  When purchasing his CBD Products, Plaintiff Gaddis also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendants that the Products contained the quantities of CBD advertised.  Plaintiff Gaddis relied on these representations and warranties in deciding to purchase Defendants' CBD Products over comparable products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the CBD Products on the same terms had he known these representations were not true.  In making his purchases, Plaintiff Gaddis paid a substantial price premium due to the false and misleading CBD Claims.  However, Plaintiff Gaddis did not receive the benefit of his bargain, because Defendants' CBD Products do not contain anywhere near the quantities of CBD advertised.  Plaintiff Gaddis also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendants and/or as the agent of Defendants.  Plaintiff Gaddis further understood that each purchase involved a direct transaction between himself and

Defendants, because the CBD Products came with packaging and other materials prepared by Defendants, including representations and warranties regarding the CBD Claims.

5.     Defendant Just Brands USA, Inc. ("Just Brands USA"), is a Florida corporation with its principal place of business in Coral Springs, Florida.  Just Brands USA manufactures, sells, and/or globally distributes JustCBD-branded products, and is responsible for the advertising, marketing, and for packaging of CBD-infused edibles, oils, tinctures, creams, and vapes, including the CBD Products.  Just Brands USA manufactured, marketed, and/or sold the CBD Products during the relevant Class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the CBD Products and the CBD Claims was primarily carried out at Just Brands USA's headquarters and facilities within Florida, as is most, or all, of the CBD Products' manufacturing and assembly.

6.     Defendant Just Brands FL, LLC ("Just Brands FL"), is a Florida corporation with its principal place of business in Coral Springs, Florida.  Just Brands FL manufactures, sells, and/or globally distributes JustCBD-branded products, and is responsible for the advertising, marketing, and for packaging of CBD-infused edibles, oils, tinctures, creams, and vapes, including the CBD Products.  Just Brands FL manufactured, marketed, and/or sold the CBD Products during the relevant Class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the CBD Products and the CBD Claims was primarily carried out at Just Brands FL's headquarters and facilities within Florida, as is most, or all, of the CBD Products' manufacturing and assembly.

7.     Defendant SSGI Financial Services, Inc., is a Florida corporation with its principal place of business in Coral Springs, Florida.  SSGI manufactures, sells, and/or globally distributes JustCBD-branded products, and is responsible for the advertising, marketing, and

packaging of CBD-infused edibles, oils, tinctures, creams, and vapes, including the CBD Products.  SSGI manufactured, marketed, and sold the CBD Products during the relevant Class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the CBD Products and the CBD Claims was primarily carried out at SSGI's headquarters and facilities within Florida, as is most, or all, of the CBD Products' manufacturing and assembly.

8.     Based on information and belief, SSGI – as the parent company of Just Brands USA and Just Brands FL – dominates and controls all aspects of their operations.  For example, the online retail site operated by Defendants, www.justcbdstore.com, references "SSGI Financial Services" and JUST CBD "DBA Just Brands USA."  Additionally, SSGI's principal address is registered with the Florida Secretary of State in Coral Springs, Florida, which is the same town as both Just Brands USA and Just Brands FL.  SSGI and Just Brands FL both list Stephen Iacona under "Officer/Director," and Just Brands USA lists "SSGI Financial Services" under "Officer/Director."  As such, each of the Defendants discussed above acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

9.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are citizens of Florida and maintain their principal places of business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District, and documents and witnesses are likely to be located within this District.  Moreover, Defendants distributed, advertised, and sold the CBD Products, which are the subjects of the present complaint, in this District.

## FACTS COMMON TO ALL CLAIMS

### A.    General Explanation Of CBD Products

12.    CBD is a highly sought-after dietary supplement with medicinal properties.  CBD is used to treat anxiety, insomnia, depression, diabetes, PTSD, and chronic pain.  CBD can be taken into the body in multiple ways, including by inhalation of smoke or vapor, as an aerosol spray into the cheek, and by mouth.  Food and beverage items can be infused with CBD as an alternative means of ingesting the substance.

13.    CBD, which stands for cannabidiol, is a naturally occurring phytocannabinoid found in certain strains of hemp.  Food and beverage products containing CBD were introduced in the United States in 2017.  Hemp seed ingredients that contain trace amounts of THC during harvesting (less than 0.3%) have been declared by the United States Food and Drug Administration ("FDA") to be generally recognized as safe ("GRAS").

14.     The production, sale, and distribution of CBD is a booming industry that is

"gaining in popularity among consumers with the legal CBD market projected to surpass $23

billion in annual U.S. sales by 2023," according to Forbes.[3]  With large retailers like CVS,

Walgreens, and Kroger having entered the market, the CBD industry is undergoing rapid growth.

Yet, given that the "industry has little to no regulation with no one watching what's going into

the product[,]" this rapid expansion has produced negative consequences for consumers.[4]  For

instance, after commissioning lab testing for "35 CBD products from seven different

companies[,]" NBC investigators discovered that "20 of [the 35 samples tested] had less than

half of the amount of CBD advertised on the label" and "[s]ome samples had no CBD at all."

**B.     Defendants' CBD Products Prominently Feature The CBD Claims**

15.     The CBD Products at issue include the following products from Defendants, all of

which prominently feature the amount of CBD (e.g. 250mg) on the front label:

> A.     All "CBD Gummies" labeled with CBD Claims, including all flavors and
> sizes of:  "JustCBD Gummies,"[5] "JustCBD Sugar Free Gummies,"[6] and
> "JustCBD Jet Setter Orange Berry Blast Immune Support Gummies;"[7]



---

[3] https://www.forbes.com/sites/brucejapsen/2019/07/11/cvs-walgreens-to-lead-23-billion-cbd-market-by-2023/#47aa4d2252ca (accessed 08/09/19).
[4] https://www.nbcmiami.com/investigations/505335101.html (accessed 08/09/19).
[5] "JustCBD Gummies" come in a range of flavors, including "Sour Bear," "Apple Rings," "Happy Face," "Worms," "Rainbow Ribbons," "Sour Worms," "Peach Ring," "Gummy Cherries," "Blueberry Rings," and "Watermelon Rings."  Additionally, "[e]ach flavor is available in different size jars from 250mg, 500mg, 750mg, 1000mg, 3000mg jars."  *See* https://www.justcbdstore.com/product-category/cbd-gummies/ (accessed 08/09/2019).
[6] "JustCBD Sugar Free Gummies" come in different sizes, including jars purporting to contain "250mg CBD," "500mg CBD," "750mg CBD," and "1000mg CBD."  *See* https://www.justcbdstore.com/product/sugar-free-cbd-gummies/ (accessed 08/09/2019).
[7] "JustCBD Jet Setter Orange Berry Blast Immune Support Gummies" products purport to contain "300mg" per jar.

B.      All "CBD Edibles" labeled with CBD Claims, including all flavors and sizes of:  "JustCBD Protein Bars"[8] and "JustCBD Dried Fruit;"[9]




C.      All "CBD Honey, Oil, and Isolate" Products labeled with CBD Claims, including all sizes of:  "JustCBD Coconut Oil,"[10] "JustCBD Honey Sticks,"[11] and "JustCBD Isolate;"[12]





---

[8] "JustCBD Protein Bars" come in a range of flavors, including "Almond," "Cinnamon Pecan," "Peanut Butter," and "Smores."  Each flavor can be purchased individually or in a case containing 12 protein bars.  Regardless of flavor, the labeling and packaging of each individual protein bar represents that each bar contains "25mg CBD."  *See* https://www.justcbdstore.com/product/protein-bars/ (accessed 08/09/2019).

[9] "JustCBD Dried Fruit" Products come in a range of flavors, including "Apricots," "Apple Slices," "Pineapple Chunks," "Papaya Chunks," "Kiwi Chunks," and "Mango."  Each flavor is available in different sizes, including jars purporting to contain "250mg CBD," "500mg CBD," "750mg CBD," "1000mg CBD," and "3000mg CBD."  *See* https://www.justcbdstore.com/product-category/cbd-dried-fruit/ (accessed 08/09/2019).

[10] "JustCBD Coconut Oil" purports to contain "360mg CBD."  *See* https://www.justcbdstore.com/product/coconut-oil-tincture-2/ (accessed 08/09/2019).

[11] "JustCBD Honey Sticks" purport to contain "10mg CBD per stick" and can be purchased in two sizes: a "10-pack" jar and a "100-pack" jar.  *See* https://www.justcbdstore.com/product/cbd-honey-sticks/; https://www.justcbdstore.com/product/honey-sticks-jar-10-pack/ (accessed 08/09/2019).

[12] "JustCBD Isolate," which Defendants advertise as "a pure isolate powder containing 99% CBD, our highest concentration CBD product available," comes in a "1-gram jar with 990mg of CBD."  *See* https://www.justcbdstore.com/product-category/cbd-isolate/ (accessed 08/09/2019).

D.  All "JustCBD Tincture" Products labeled with CBD Claims, including all flavors and sizes of: "JustCBD Full Spectrum Tincture,"[13] "JustCBD Oil Tincture,"[14] and "JustCBD Daily Dose Oil Tincture;"[15] and



E.  All "JustCBD Vape" Products labeled with CBD Claims, including all flavors of: "JustCBD Vape Cartridges,"[16] "JustCBD Signature Series Cartridges,"[17] and "JustCBD Vape Juice."[18]

   

---

[13] "JustCBD Full Spectrum Tincture" Products come in a range of sizes, including bottles purporting to contain "50mg CBD," "100mg CBD," "250mg CBD," "550mg CBD," "1000mg CBD," and "1500mg CBD." *See* https://www.justcbdstore.com/product/full-spectrum-tincture/ (accessed 08/09/2019).

[14] "JustCBD Oil Tincture" Products come in a range of flavors, including "Coconut Oil," "Hemp Seed Oil," and "Liquid Honey." Each flavor is available in different sizes, including bottles purporting to contain "50mg CBD," "100mg CBD," "250mg CBD," "550mg CBD," "1000mg CBD," or "1500mg CBD." *See* https://www.justcbdstore.com/product-category/cbd-tincture/ (accessed 08/09/2019).

[15] "JustCBD Daily Dose Oil Tincture" products come in multiple flavors, including "Coconut Oil," and "Hemp Seed Oil." Each flavor purports to contain "[a]pproximately 65mg of CBD." *See* https://www.justcbdstore.com/product/daily-dose-mct-coconut-oil/; https://www.justcbdstore.com/product/daily-dose-hemp-seed-oil/ (accessed 08/09/2019).

[16] "JustCBD Vape Cartridges" come in a range of flavors, including "Strawberry," "Blueberry," "Mango," and "Honey." Each flavor purports to contain "200mg CBD." *See* https://www.justcbdstore.com/product-category/cbd-vape-cartridges/ (accessed 08/09/2019).

[17] "JustCBD Signature Series Cartridges" come in a range of flavors, including "Pineapple Express," "Northern Lights," and "Sour Diesel." Each flavor purports to contain "200mg CBD." *See* https://www.justcbdstore.com/product-category/cbd-vape-cartridges/ (accessed 08/09/2019).

[18] "JustCBD Vape Juice" Products come a range of flavors, including "Blue Dream," "Blue Razz," "Cinnamon Sugar Cookies," "Cookies," "Mango Ice," "Watermelon OG," "Pena Colada," "Strawberry Cheesecake," and "Pineapple Express." Each flavor comes in "60mL bottles" purporting to contain "100mg of CBD, 250mg of CBD, 500mg of CBD, or 1000mg of CBD[.]" *See* https://www.justcbdstore.com/product-category/cbd-vape-oil/ (accessed 08/09/2019).

### C.  Defendants' CBD Products Contain Less CBD Than Promised

16.     Defendants purport to take honesty and transparency seriously.  As depicted

below, Defendants state on their website:  "Looking around we found that the CBD business was

consistently misrepresented and being taken advantage of.  At JustCBD™ we believe that you

have the right to know exactly what is inside your CBD products.  It is our mission and promises

to never misrepresent the content of our products.  With the help of world-class labs to test our

products, we are confident that JustCBD™ is made with industry-leading quality, honesty, and

love."[19]



## About Us



Just CBD™ was founded on the basis that CBD is nature's secret miracle.
Looking around we found that the CBD business was consistently
misrepresented and being taken advantage of. At Just CBD™ we believe that
you have the right to know exactly what is inside your CBD products. It is our
mission and promises to never misrepresent the content of our products.
With the help of world-class labs to test our products, we are confident that
Just CBD™ is made with industry-leading quality, honesty, and love.

17.     Notwithstanding that business philosophy, Defendants' CBD Claims are false and

misleading.  As independent lab testing reveals, the true quantity of CBD in the CBD Products is

only a small fraction of Defendants' representations.  Plaintiff's counsel commissioned Anresco

Laboratories to perform independent testing of Defendants' products, which show that the

Products do not contain the amount of CBD promised in the CBD Claims.  Specifically, pursuant

to lab test results dated June 12, 2019, Defendants' "JustCBD Liquid Honey Tincture" product,

which is labeled as containing "100mg CBD," actually contains a total of 48.92mg.  This is an

underfill of 51.08%.  As another example, a June 4, 2019 lab test failed to detect any CBD in

---

[19] https://www.justcbdstore.com/about-us/ (accessed 08/09/19).

Defendants' "JustCBD Apple Rings Gummies" product, which is labeled as containing "250mg CBD" per jar. This is an underfill of 100%.

| CBD Product | CBD Claim | Actual CBD Content | % Difference |
|---|---|---|---|
| JustCBD Liquid Honey Tincture | **100mg** | **48.92mg** | **-51.08%** |
| JustCBD Apple Rings Gummies | **250mg** | **0mg** | **-100%** |

18.    By permanently marking the CBD Products with their purported CBD content, Defendants knew that the CBD Claims are false and misleading, yet still advertised, labeled, and packaged the CBD Products with the false and misleading CBD Claims.

19.    Simply put, Defendants' CBD Claims are a farce. Defendants knowingly prepared the material on their website and product labels to misrepresent the true quantity of CBD in the CBD Products.

<strong>CLASS ACTION ALLEGATIONS</strong>

20.    Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all persons in the United States who purchased CBD Products with a CBD Claim from Defendants (the "Class"). Excluded from the Class are Defendants Just Brands USA, Inc., and SSGI Financial Services, Inc., Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which it has a controlling interest, and the Judge to whom this case is assigned and any member of his or her immediate family.

21.    Plaintiff also seeks to represent a subclass defined as all Class members in New York (the "New York Subclass" or "Subclass").

22.    Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at

this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

23.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     whether the CBD Claims on Defendants' CBD Products are false and misleading;

(b)     the actual amount of CBD in the CBD Products;

(c)     whether Defendants engaged in false and/or deceptive advertising;

(d)     whether Defendants have been unjustly enriched by their conduct;

(e)     whether Class members have sustained monetary loss and the proper remedy for and measure of that loss;

(f)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief;

(g)     the number of CBD Products sold to consumers; and

(h)     whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

24.     Plaintiff's claims are typical of the claims of Class members because Plaintiff purchased a CBD Product in reliance on the representations and warranties described above, and suffered a loss as a result of those purchases.

25.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

26.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**(Breach Of Express Warranty**)

27.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

28.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendants.

29.     In connection with the sale of the CBD Products, Defendants issued written warranties.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers of

the CBD Products, expressly warranted that the Products were fit for their intended purpose by making promises and affirmations of fact on their Products' labeling and packaging, including the CBD Claims.

30.     The affirmations of fact and promises made by Defendants to Plaintiff and the Class regarding the CBD Products became part of the basis of the bargain between Defendants and Plaintiff and the Class and Subclass, thereby creating an express warranty that the CBD Products would conform to those affirmations of fact, representations, promises, and descriptions in that each Product would contain the amount of CBD specified in the CBD Claims.

31.     The CBD Products do not, in fact, contain the amount of CBD promised in the CBD Claims.  Instead, the CBD Products contain only a fraction of the CBD advertised on Defendants' website and on the Products' labeling and packaging.

32.     Plaintiff Gaddis and members of the Class suffered economic injury as a direct and proximate result Defendants' breach because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the CBD Products based on Defendants' express warranties; and (c) the CBD Products did not have the characteristics, uses, or benefits as promised by Defendants in the CBD Claims.  As a result, Plaintiff and members of the Class and the Subclass have been damaged either in the full amount of the purchase price of the CBD Products or in the difference in value between the Products as warranted and the Products as sold.

33.     On July 22, 2019, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an express warranty and demanded that

they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit A**.

**COUNT II**
**(Breach Of The Implied Warranty Of Merchantability**)

34.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

35.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

36.     Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed the CBD Products, which are "good[s]" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that the CBD Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on the Products' labeling and packaging, namely the CBD Claims.  However, each of these implied warranties were false with respect to the goods of the kind sold to Plaintiff and Class members in that they failed to contain the amount of CBD promised by the CBD Claims.

37.     In reliance upon Defendants' skill and judgment and the implied warranties above, Plaintiff and Class members purchased the CBD Products.

38.     The CBD Products were not altered by Plaintiff or Class members in a manner that would reduce the quantity of CBD the products contain.

39.     The CBD Products were underfilled when they left the exclusive control of Defendants.

40.     Defendants knew the CBD Products would be purchased and used by Plaintiff and members of the Class without additional testing by Plaintiff and Class members. The CBD Products were not of fair average quality within their description, were not adequately labeled, and did not conform to the promises or affirmations of fact made on the Products' labels, namely the CBD Claims.

41.     More specifically, Defendants breached their implied warranty of merchantability to Plaintiff and the Class because the CBD Products would not pass without objection in the trade in that they do not conform to CBD Claims made on the Products' labels.  Instead, the CBD Products contain substantially less CBD than they were labeled to contain, and Plaintiff and Class members did not receive the goods as warranted.

42.     Plaintiff Gaddis and members of the Class suffered economic injury as a direct and proximate result Defendants' breach of the implied warranty because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the CBD Products based on Defendants' warranties; and (c) the CBD Products did not have the characteristics, uses, or benefits as promised by Defendants in the CBD Claims.  As a result, Plaintiff and members of the Class and the Subclass have been damaged either in the full amount of the purchase price of the CBD Products or in the difference in value between the Products as warranted and the Products as sold.

## COUNT III
### (Unjust Enrichment)

43.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

44.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

45.    Plaintiff and Class members conferred a benefit in the form of monies paid on Defendants by purchasing underfilled CBD Products.

46.    Defendants voluntarily accepted and retained this benefit.

47.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the CBD Products.  Retention of those moneys under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendants in labeling, packaging, marketing, and/or advertising the CBD Products, including the CBD Claims.  These misrepresentations injured Plaintiff and Class members because they would not have purchased the CBD Products if the true facts were known.

48.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for underfilled CBD Products, it would be unjust and inequitable for the Defendants to retain it without paying the value thereof.  Accordingly, Defendants must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV
### (Fraud)

49.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

51.     As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information about the CBD Products manufactured, distributed, and sold by Defendants.  For example, Defendants made promises and affirmations of fact in labeling, packaging, marketing, and/or advertising the CBD Products, including the CBD Claims.

52.     As indicated above, however, these representations are false as the CBD Products are underfilled and contain up to 100% less CBD than Defendants claim.

53.     The misrepresentations and omissions of material fact made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the CBD Products.

54.     By virtue of labeling their products with the CBD Claims, Defendants knew or should have known the CBD Claims were false, but continued to manufacture and sell underfilled CBD Products in the retail and wholesale markets.

55.     During the relevant time period, Plaintiff and Class members were unaware that the CBD Products were underfilled.

56.     The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

57.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT V
### (Violation Of New York's General Business Law § 349)

58.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendants.

60.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices because the CBD Products do not contain the amount of CBD promised by the CBD Claims.

61.     The foregoing deceptive acts and practices were directed at consumers.

62.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase the same.

63.     Plaintiff Gaddis and New York Subclass members suffered economic injury as a direct and proximate result Defendants' violation because: (a) they would not have purchased the Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium compared to products without the misrepresentations alleged herein; and (c) the Products did not have the characteristics, uses, or benefits promised.

64.     On behalf of himself and other members of the New York Subclass, Plaintiff Gaddis seeks to enjoin the unlawful acts and practices described herein, to recover actual damages, statutory damages in the amount of $50, and reasonable attorneys' fees.

## <u>COUNT VI</u>
### (Violation Of New York's General Business Law § 350)

65.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendants.

67.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York GBL.

68.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

69.     This misrepresentation has resulted in consumer injury or harm to the public interest.

70.     Plaintiff Gaddis and New York Subclass members suffered economic injury as a direct and proximate result Defendants' violation because: (a) they would not have purchased the Products on the same terms if they knew that the Products' CBD Claims were false; (b) they paid a price premium compared to products without the misrepresentations alleged herein; and (c) the Products did not have the characteristics, uses, or benefits promised.

71.     On behalf of himself and other members of the New York Subclass, Plaintiff Gaddis seeks to enjoin the unlawful acts and practices described herein, to recover actual damages, statutory damages in the amount of $500, and reasonable attorneys' fees.

## COUNT VII
### (Violation Of The Florida Deceptive And Unfair Practices Act, Fla. Stat. §§ 501.201, *et seq.*)

72.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

74.     Class members are "consumers" within the meaning of the Florida Unfair and Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

75.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

76.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1).  Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

77.    In the course of business, Defendants actively concealed information reasonable consumers need to know before purchasing Defendants' products.

78.    Defendants knew or should have known that the CBD Products did not contain anywhere near the quantity they were labeled and advertised as containing.  The Class was deceived by Defendants' misrepresentation into believing that the CBD Products contained substantially more CBD than they are labeled to contain.

79.    Defendants made material misrepresentations about the quantity of CBD in the CBD Products that were false and misleading.

80.    Defendants knew or should have known their conduct violated the FDUPTA.

81.    Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Class, about the true nature of the CBD Products they manufacture, advertise, sell, and distribute.

82.    The Class suffered ascertainable loss caused by Defendants' material misrepresentations. But for Defendants' deceptive and unfair conduct, Plaintiff and the Class would not have purchased the CBD Products.

83.    As a direct and proximate result of Defendants' FDUPTA violations, Plaintiff and the Class suffered injury in fact and actual damages.

84.     Plaintiff and the Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUPTA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.     For an order certifying the Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.     For an order declaring the Defendants' conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.     For statutory, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper;

h.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i.     Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.     For such other and further relief as the Court may deem proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  August 16, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Scott A. Bursor*

Scott A. Bursor (State Bar No. 68362)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
E-Mail: scott@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (*pro hac vice* forthcoming)
Frederick J. Klorczyk III (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ndeckant@bursor.com
                fklorczyk@bursor.com

*Attorneys for Plaintiff*